**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

Randy L. Dillon,

        Petitioner,

    v.                                                  **Case No. 2:10-cv-638**

                                **JUDGE JAMES L. GRAHAM**
Warden, Ross Correctional                  **Magistrate Judge Kemp**
Institution,

        Respondent.

## REPORT AND RECOMMENDATION

Petitioner, Randy L. Dillon, a state prisoner, filed this petition for a writ of habeas

corpus pursuant to 28 U.S.C. §2254 alleging that he is in custody in violation of the

Constitution of the United States. The case is before the Court on the petition, a

supplemental memorandum supporting the petition, the return of writ, petitioner's

reply, and the exhibits of the parties. For the following reasons, it will be recommended

that the petition be **DENIED**.

## I. PROCEDURAL HISTORY

During its April, 2007 term, a Muskingum County grand jury indicted petitioner

on charges of burglary, kidnaping, and attempted murder, as well as unlawful sexual

conduct (rape) and unlawful sexual contact (gross sexual imposition) with a minor. All

of these charges stemmed from an incident on March 13, 2007, during which petitioner

allegedly broke into a home, kidnaped a 14-month old child, raped her, and then left

her, wrapped only in a comforter, alongside a rural road.

Petitioner's first trial began on January 10, 2008, but ended in a mistrial because his attorney asked the state's first witness if she had failed a lie detector test. Over petitioner's objection, on Double Jeopardy grounds, to a retrial, a second trial began on April 7, 2008. The jury found petitioner guilty of all charges except gross sexual imposition. After ordering and receiving a presentence investigation report, the trial judge sentenced petitioner to life without the possibility of parole on the rape charge, and consecutive sentences of ten years each on the kidnaping and attempted murder charges, and eight years on the burglary charge, for a total of life in prison plus 28 years. *Return of Writ*, Exhibit 8.

Petitioner timely appealed to the Court of Appeals for the Fifth Appellate District, raising these assignments of error:

I. THE TRIAL COURT COMMITTED REVERSIBLE ERROR WHEN IT OVERRULED THE ADMISSION OF HIGHLY PROBATIVE, ADMISSIBLE EVIDENCE IN SUPPORT OF MR. DILLON'S ALIBI DEFENSE, AND THUS IMPEDED MR. DILLON'S ABILITY TO DEFEND HIMSELF AGAINST THE CHARGES LEVIED AGAINST HIM, IN VIOLATION OF HIS FIFTH, SIXTH, AND FOURTEENTH AMENDMENT RIGHTS UNDER THE UNITED STATES CONSTITUTION, AND SECTIONS 10 AND 16, ARTICLE I OF THE OHIO CONSTITUTION.

II. THE TRIAL COURT VIOLATED MR. DILLON'S RIGHTS TO DUE PROCESS AND A FAIR TRIAL WHEN, IN THE ABSENCE OF SUFFICIENT EVIDENCE, THE TRIAL COURT CONVICTED MR. DILLON OF RAPE AND ATTEMPTED MURDER, IN VIOLATION OF HIS FIFTH, SIXTH, AND FOURTEENTH AMENDMENT RIGHTS UNDER THE UNITED STATES CONSTITUTION, AND SECTIONS 10 AND 16, ARTICLE I OF THE OHIO CONSTITUTION.

III. THE TRIAL COURT VIOLATED MR. DILLON'S RIGHTS TO DUE PROCESS AND A FAIR TRIAL WHEN IT ENTERED JUDGMENTS OF CONVICTION FOR

RAPE AND ATTEMPTED MURDER, WHEN THOSE JUDGMENTS WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE, IN VIOLATION OF MR. DILLON'S RIGHTS UNDER THE FIFTH, SIXTH, AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION, AND SECTIONS 10 AND 16, ARTICLE I OF THE OHIO CONSTITUTION.

IV. THE TRIAL COURT COMMITTED REVERSIBLE ERROR WHEN IT FAILED TO INSTRUCT THE JURY REGARDING GROSS SEXUAL IMPOSITION AND ATTEMPTED RAPE AS LESSER INCLUDED OFFENSE OF RAPE, IN VIOLATION OF MR. DILLON'S FIFTH, SIXTH, AND FOURTEENTH AMENDMENT RIGHTS UNDER THE UNITED STATES CONSTITUTION, AND SECTIONS 10 AND 16, ARTICLE I OF THE OHIO CONSTITUTION.

V. THE TRIAL COURT'S ERRONEOUS DECLARATION OF A MISTRIAL AT MR. DILLON'S FIRST TRIAL, AND SUBSEQUENT RETRIAL OF MR. DILLON, WAS IN VIOLATION OF HIS FIFTH, SIXTH, AND FOURTEENTH AMENDMENT RIGHTS UNDER THE UNITED STATES CONSTITUTION, AND SECTIONS 10 AND 16, ARTICLE I OF THE OHIO CONSTITUTION.

VI. DEFENSE COUNSEL RENDERED INEFFECTIVE ASSISTANCE OF COUNSEL IN VIOLATION OF MR. DILLON'S RIGHTS UNDER THE FIFTH, SIXTH, AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION, AND SECTIONS 10 AND 16, ARTICLE I OF THE OHIO CONSTITUTION.

In a decision issued on June 24, 2009, the court of appeals overruled the assignments of error and affirmed petitioner's conviction and sentence. *State v. Dillon*, 2009 WL 1835950 (Muskingum Co. App. June 24, 2009). The Ohio Supreme Court denied petitioner's timely request for review. *State v. Dillon*, 123 Ohio St.3d 1495 (November 18, 2009).

While petitioner's appeal to the Ohio Supreme Court was pending, petitioner filed a motion to reopen his appeal under Ohio Appellate Rule 26(B). He sought to advance two additional assignments of error relating to the trial court's exclusion of evidence that petitioner had told the police, before he came under suspicion for having

committed the crimes he was eventually convicted of, that he himself had been the victim of an assault and robbery during the same time frame. On October 30, 2009, the court of appeals denied the motion to reopen because it was untimely. *Return of Writ*, Exhibit 21. It does not appear that any appeal was taken from this order. Additionally, on April 8, 2010, petitioner filed with the trial court a motion to vacate his conviction, arguing that the court lacked subject-matter jurisdiction to hear his case due to deficiencies in the way in which the criminal complaint was filed. That motion was denied four days later. *Return of Writ*, Exhibit 23. Petitioner appealed that order to the Fifth Appellate District Court of Appeals, and it appears from the docket of that case, accessed at http://clerkofcourts.muskingumcounty.org/PA/pa.urd/pamw2000.docket _lst?63686258, that his appeal was dismissed and that he took no further appeal from that dismissal.

In his habeas corpus petition, petitioner raises only four claims:

**Ground One:** Petitioner was denied due process when he was denied his constitutional right to present a defense.

**Ground Two:** Petitioner was denied the effective assistance of counsel on appeal.

**Ground Three:** Petitioner was denied due process of law when there was insufficient evidence to convict him.

**Ground Four:** Petitioner was denied due process when the trial court failed to instruct the jury on a lesser included offense.

It is respondent's position that grounds two and four have been procedurally defaulted, and that all of petitioner's claims lack merit.

## II. FACTS

The underlying facts, which, as recited by the state court of appeals, must be taken as true for purposes of this case, are these:

On March 13, 2007 M.B., the 14-month-old daughter of Tonya Alexander, was kidnapped. M.B. was taken from the bed where she was sleeping at her home on Schaum Avenue. M.B. was put to bed sometime after 11:00 p.m. When Tonya Alexander awoke around 4:00 a.m ., she went to check on M.B. and found her missing. Tonya immediately began looking for Miah. Tonya woke her daughters to see if either of them had M.B. with them. The daughters helped their mom look throughout the house. When M.B.could not be found, Tonya, who had neither a flashlight nor a telephone, ran next door to her friend's house to get a flashlight and ask for help. Tonya's neighbor called 911. Police soon responded and began searching for Miah. Once it was determined that M.B. was not in the house, the scene was secured for purposes of investigation and evidence collection. Law enforcement collected numerous items for testing and comparison both from inside and outside the home. Among items collected by law enforcement were various fingerprints, bedding from where M.B. was sleeping, Miah's bottle, and castings of tire impressions in the back yard.

About the same time M.B. was being put to bed, appellant was drinking with Mike Norris, a friend, Stella Lantz, his girlfriend and Mary Bittner, his mother. Sometime after midnight, Mike Norris ran out of cigarettes. Mr. Norris was going to go out to his van and get some when appellant offered to run out and get them. Mike Norris gave the keys to his van to appellant. Appellant left and did not return. Sometime after 5:00 a.m., appellant called to say he was at a gas station and needed a ride. Shortly after making this call, a clerk from the gas station called the police because the appellant was bothering the customers.

When Sheriff's deputies arrive at the gas station, they discovered that appellant had an outstanding warrant. Appellant was taken into custody on the warrant and transported to jail. As part of the booking procedure, appellant's clothes and personal effects were placed in storage. At this time, M.B. is still missing and appellant has not been connected to her disappearance.

Shortly before noon on March 13, 2007, M.B. was found alive next to State Route 146 in the Dillon Wildlife area. Jeff Yingling found M.B. wrapped in a comforter. Mr. Yingling testified that when he first saw the legs sticking out of the comforter he thought it was a doll. He only realized it was a living baby when he opened the comforter. Mr. Yingling flagged down a car driven by Joseph Schilling. Mr. Schilling was unable to get cellular phone service. He was able to flag down another motorist, Danny Price. Mr. Price drove up the road and called for help. While waiting for help to arrive, another motorist, Randy Rowell, a hospital salesperson, pulled up and offered his assistance.

After medical crews and law enforcement personnel arrived at the scene, M.B. was transported to a local hospital. She was ultimately taken to Children's Hospital in Columbus. Law enforcement secured the area where M.B. was found and begin taking pictures and collecting evidence.

Several days later, the police received a call about an abandoned van in a cornfield near the area where M.B. was found. The van that was abandoned was Mike Norris' van. At this time, appellant emerged as a suspect in the case.

A search of the van's interior revealed a bed sheet that was the same pattern and same brand as the bed sheet M.B. was sleeping on when she was kidnapped. Further, investigation revealed that the comforter that M.B. was wrapped up in when Jeff Yingling discovered her alongside the road belonged to the Norris', and had been put in the van by Mike Norris' wife. According to Tonya Alexander, appellant had rented a garage at her residence and had been inside of the house on several occasions.

Ultimately, the investigation established the following facts. Appellant knew the victim; appellant had been driving the van that was found approximately 500 feet from where M.B. was found; an eyewitness described seeing someone walking alongside the road around 4:00 a.m. away from the area where M.B. had been left that had similar characteristics to appellant. Additionally, surveillance video from two separate gas stations placed appellant in the same area moving in a direction toward Zanesville and away from where M.B. was found. Tire castings recovered from behind Miah's house are consistent with the tires on the van. An analysis of the clothes appellant was wearing at the time he was arrested on the unrelated warrant revealed mud that is consistent with mud samples taken from the location where the van was recovered.

DNA analysis revealed appellant's DNA on the "onesie" that M.B. was wearing when she was found. Additionally, Miah's DNA was found on the hip area of appellant's shirt. DNA testing excluded more than 99.89% of the population as contributors for each respective sample.

Medical evidence in this case as provided by Dr. Joseph Stein and certified nurse practitioner Gail Hornor established that M.B. suffered an injury inside of her labia majora that was not consistent with a rash but was consistent with sexual assault. No semen was found on any of the items that were submitted for forensic analysis.

*State v. Dillon*, 2009 WL 1835950, at *1-3.

### III.  PROCEDURAL DEFAULT

In recognition of the equal obligation of the state courts to protect the constitutional rights of criminal defendants, and in order to prevent needless friction between the state and federal courts, a state criminal defendant with federal constitutional claims is required to present those claims to the state courts for consideration.  28 U.S.C. §2254(b), (c).  If he fails to do so, but still has an avenue open to him by which he may present his claims, then his petition is subject to dismissal for failure to exhaust state remedies.  *Id.*; *Anderson v. Harless*, 459 U.S. 4, 6 (1982)(per curiam); *Picard v. Connor*, 404 U.S. 270, 275-76 (1971).  But if, because of a procedural default, the petitioner can no longer present his claims to the state courts, then he has also waived those claims for purposes of federal habeas corpus review, unless he can demonstrate both cause for the procedural default, as well as actual prejudice from the alleged constitutional error.  *Murray v. Carrier*, 477 U.S. 478, 485 (1986); *Engle v. Isaac*, 456 U.S. 107, 129 (1982); *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977).

In the Sixth Circuit, a four-part analysis must be undertaken when the state argues that a federal habeas claim is waived by the petitioner's failure to observe a state procedural rule. *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986). "First, the court must decide that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule." *Id*. Second, the Court must determine whether the state courts actually enforced the state procedural sanction. *Id*. Third, it must be decided whether the state procedural forfeiture is an adequate and independent state ground upon which the state can rely to foreclose review of a federal constitutional claim. *Id*. Finally, if the Court has determined that a state procedural rule was not complied with, and that the rule was an adequate and independent state ground, then the petitioner must demonstrate that there was cause for him not to follow the procedural rule, and that he was actually prejudiced by the alleged constitutional error. *Id*. This "cause and prejudice" analysis applies to failures to raise or preserve issues for review at the appellate level. *Leroy v. Marshall*, 757 F.2d 94 (6th Cir. 1985).

As to petitioner's second ground for relief, which asserts ineffective assistance of appellate counsel, respondent argues that this claim was defaulted in two separate ways: it was not timely presented to the Fifth District Court of Appeals because petitioner's motion to reopen his appeal was not filed within ninety days of judgment, as required by Rule 26(B), and petitioner did not appeal the denial of that motion to the Ohio Supreme Court. In his traverse, petitioner acknowledges that this claim was procedurally defaulted due to his failure to appeal the denial of his Rule 26(B) motion to

the Ohio Supreme Court. It is clear both the failure timely to pursue relief under Rule 26(B), and the failure to appeal the denial of such motions, qualify as procedural defaults. *See Tolliver v. Sheets*, 594 F.3d 900 (6th Cir. 2010) (failure timely to file a Rule 26(B) motion is a procedural default); *Amell v. Smith*, 2010 WL 2010 WL 5283295 (N.D. Ohio Nov 23, 2010), *adopted and affirmed* 2010 WL 5288186 (N.D. Ohio Dec 17, 2010) (failure to appeal the denial of a Rule 26(B) motion is a procedural default). Moreover, petitioner has offered no justification for this default. Therefore, the Court concludes that this claim has been procedurally defaulted.

Ground four is, according to respondent, also subject to procedural default because the essence of that claim - that the trial court erred with respect to count four, the rape count, by not instructing the jury on the lesser-included offense of gross sexual imposition - was not raised at the trial court level, and the state court of appeals reviewed the claim only for "plain error." Respondent asserts that Ohio has and enforces the rule that objections to jury instructions, including any failure to object to the absence of instructions on lesser-included offenses, must be made contemporaneously with the giving of the instructions, and that the failure to do so constitutes a waiver of the issue for purposes of appeal.

Petitioner discusses this claim in his traverse, at pages 13-15, but does not address the issue of procedural default. Rather, he quotes extensively from the state appellate court's plain error review, and concludes that "[t]he state failed to prove the rape charge and the trial court should have given a lesser included instruction as a

matter of course." *Traverse*, at 15.

The record confirms respondent's contention that petitioner's trial counsel did not either request an instruction on lesser included offenses with regard to count four of the indictment or object to the trial court's failure to give such an instruction. As the state court of appeals noted, "Appellant concedes that he did not object nor did he request orally or in writing the instructions that he now contends should have been given by the trial court. " *State v. Dillon, supra*, at *12. Further, that court made it clear that it considered the claim to have been waived for all purposes other than plain error review, stating "our review of the alleged error must proceed under the plain error rule of Crim.R. 52(B)." *Id.* In identical circumstances, this Court has held that this is a procedural default which precludes merits review of the claim in a habeas corpus proceeding. *See Mason v. Lazaroff*, 2008 WL 1990367 (S.D. Ohio April 30, 2008). Further, by conducting a plain error review, the state court did not excuse the procedural default or revive the claim for purposes of habeas corpus review. *See Paprocki v. Foltz*, 869 F.2d 281 (6th Cir. 1989); *Taylor v. Mitchell*, 296 F.Supp.2d 784, 800 (N.D. Ohio 2003) (" State court review of an otherwise procedurally defaulted claim to determine whether the error, if any, constituted a manifest miscarriage of justice does not revive the defaulted claim for purposes of federal habeas corpus review"). Again, petitioner has not offered any excuse for this procedural default, and none appears from the record. Thus, this claim also must be dismissed on procedural default grounds.

## IV.  THE MERITS

**AEDPA Standard of Review**

The provisions of the Antiterrorism and Effective Death Penalty Act ("AEDPA") that became effective prior to the filing of the instant petition apply to this case. See *Lindh v. Murphy*, 521 U.S. 320, 336 (1997). Under the AEDPA, a federal court may not issue a writ of habeas corpus on a claim that the state courts adjudicated on the merits unless the state court adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or was based on "an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," 28 U.S.C. § 2254(d)(2). Section 2254(d)(1) circumscribes a federal court's review of claimed legal errors, while § 2254(d)(2) places restrictions on a federal court's review of claimed factual errors.

Under § 2254(d)(1), a state court decision is "contrary to" Supreme Court precedent "when the state court confronts facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at a result different from its precedent[ ]" or "when the state court 'applies a rule that contradicts the governing law set forth in' Supreme Court cases." *Williams v. Coyle*, 260 F.3d 684, 699 (6th Cir. 2001) (quoting *Williams v. Taylor*, 529 U.S. 362, 406–07 (2000)). A state court decision involves an unreasonable application of Supreme Court precedent if the state court identifies the correct legal principle from the decisions of the Supreme Court but unreasonably applies that principle to the facts of a petitioner's case. *Coyle*, 260 F.3d at

699. A federal habeas court may not find a state adjudication to be "unreasonable" simply because the court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly. *Id*. Rather, a state court's application of federal law is unreasonable "only if reasonable jurists would find it so arbitrary, unsupported or offensive to existing precedent as to fall outside the realm of plausible credible outcomes." *Barker v. Yukins*, 199 F.3d 867, 872 (6th Cir. 1999).

Further, § 2254(d)(2) prohibits a federal court from granting an application for habeas relief on a claim that the state courts adjudicated on the merits unless the state court adjudication of the claim "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). In this regard, § 2254(e)(1) provides that the findings of fact of a state court are presumed to be correct and that a petitioner bears the burden of rebutting the presumption of correctness by clear and convincing evidence**.** Grounds one and three of the petition will be evaluated under this standard.

## A.  Ground One

The first of petitioner's two remaining grounds for relief is his claim that his rights under the Due Process clause of the Fourteenth Amendment were violated by the trial court's refusal to allow him to introduce testimony about his "alibi" defense.  In particular, he sought to introduce statements that he himself made to two other witnesses, a Zanesville police officer, Terry Sheets, and his mother, Mary Bittner, to the

effect that he had been the victim of a kidnaping and robbery on the night in question. The trial court refused to permit this testimony. The trial transcript reflects a somewhat lengthy colloquy about Officer Sheets' testimony, during which petitioner's counsel made an offer of proof that, if asked, Officer Sheets would testify that he had conducted an investigation into petitioner's claim that he had been kidnaped and robbed and when those crimes allegedly occurred. The prosecutor objected on grounds that all of the witness' knowledge of this incident came from statements made to him by petitioner and that his answers would therefore be based on inadmissible hearsay. The trial judge agreed, ruling that the witness was "not allowed to testify to anything that resulted from what the defendant told him because that would be a violation of the hearsay rule." (Trial Transcript, at 928). Counsel was, however, permitted to ask questions about petitioner's physical appearance on the night in question and whether he received any medical treatment. The first question asked to petitioner's mother to which an objection was made was, after she had testified to receiving a telephone call from petitioner on the night in question, "As a result of that phone conversation, what did you do next?" (Trial Tr., at 915). Once the objection was made and sustained, counsel clarified that he was not asking the witness what was said, and she then described what actions she took as a result of the call. *Id*. In doing so, after she said that she asked her brother to take her to the gas station from where petitioner had called, and in response to a question about her purpose for making that request, she said that "Randy had been robbed." *Id*. Again, the prosecutor objected, and the objection was

13

sustained, after which petitioner's counsel admonished the witness to "[o]nly answer the question that's asked, please." *Id.* Petitioner did not testify at his trial.

The state court of appeals characterized this claim as raising the question of whether the trial court's evidentiary rulings constituted an abuse of discretion. The court found that the exclusion was proper, holding that "[t]he statements constituted inadmissible hearsay that would have effectively allowed appellant to testify without being under oath, without cross-examination, and without direct scrutiny by the jury." *State v. Dillon*, *supra*, at *6. It did not address the constitutional claim that petitioner has raised in this Court. Respondent argues that the abuse of discretion claim is not cognizable in habeas corpus because it is a state law claim, and contends that since the state court's evidentiary ruling was correct - that is, that the statements in question were inadmissible hearsay - there cannot have been a due process violation.

First, this Court concludes that although the state court did not characterize this claim as a federal constitutional claim, such a constitutional claim was fairly presented by petitioner's appellate brief. In discussing this assignment of error, that brief makes repeated references to the right to present a complete defense as guaranteed by the Due Process clause, and it cites to, among other decisions, *Crane v. Kentucky*, 476 U.S. 683 (1986), one of a number of Supreme Court cases which recognize and discuss that right. *See also California v. Trombetta*, 467 U.S. 479 (1984). And the *Crane* court recognized that there are circumstances (albeit unusual ones) where a state court's evidentiary rulings may be correct under applicable state law, but the exclusion of evidence as a result of

14

those rulings still results in a due process violation. In that case, the Supreme Court held that the Kentucky courts' blanket exclusion of evidence surrounding the circumstances of a confession which has been deemed voluntary had the effect of keeping "highly relevant" evidence about the reliability of the confession from the jury and served no valid state purpose, such as the state's interests in fairness and reliability or in preventing repetitive and largely irrelevant evidence from unduly delaying a trial or confusing the jury. So this claim cannot be disposed of summarily simply because the state court has held that the exclusion of this evidence was in keeping with the way Ohio interprets its own hearsay rules.

The flip side of this argument is, however, that not every improper exclusion of evidence, nor every exclusion of evidence that is important to the defense but which is correctly excluded under state law, violates the Constitution. Because "state and federal rulemakers have 'broad latitude' under the Constitution to establish rules excluding evidence from criminal trials, *United States v. Scheffer*, 523 U.S. 303, 308, 118 S.Ct. 1261, 140 L.Ed.2d 413 (1998), the Supreme Court has tread carefully when assessing whether the exclusion of certain evidence amounts to a constitutional violation." *Boggs v. Collins*, 226 F.3d 728, 743 (6ᵗʰ Cir. 2000). Thus, "[r]ules excluding evidence 'do not abridge an accused's right to present a defense so long as they are not 'arbitrary' or 'disproportionate to the purpose they are designed to serve.' ' *Id.* (quoting *Rock v. Arkansas*, 483 U.S. 44, 56, 107 S.Ct. 2704, 97 L.Ed.2d 37 (1987)). The exclusion of evidence is arbitrary or disproportionate 'only where it has infringed upon a weighty interest of

the accused.' *Id.; see Wong v. Money*, 142 F.3d 313, 325 (6th Cir.1998)." *Id*. at 743-44.

Here, petitioner claims that his statements made to his mother fell within the "excited utterance" exception to the hearsay rule, and his statements to Officer Sheets were not hearsay because they shed light on the officer's motivation for conducting an investigation into the claimed assault. Although it is not this Court's function to second-guess state court rulings as to the way in which state evidentiary rules apply, it is clear that there is no basis for petitioner's claim that his statements to Officer Sheets were admissible as background for any subsequent investigation of the alleged crime. The authority he cited for that proposition to the trial court - primarily *State v. Zwelling*, 2006 WL 1613669 (Muskingum Co. App. June 5, 2006) - holds that if such statements are being offered not for their truth, but simply "to show why the officer as the testifying witness acted in a particular manner," they are not inadmissible hearsay. *Id.* at *8. But these statements would have been relevant to petitioner's alibi defense only if offered for the truth of the matters asserted, that is, that he had actually been kidnaped, beaten and robbed while the abduction and rape occurred. Whether Officer Sheets actually undertook an investigation of such a crime - and there is no evidence that he did anything beyond speak to petitioner about it - has no bearing on whether petitioner's alleged alibi was true. Consequently, the exclusion of that evidence did not deny petitioner the right to present a defense because the evidence, to the extent it was not being offered for its truth, was simply immaterial to his defense.

With respect to what he might have said to his mother - and the record does not

clearly reflect that he attempted to introduce any evidence about that, because counsel limited his questions to matters other than any statements petitioner may have made and instructed the witness not to repeat what others had said to her - petitioner claims that this evidence was a classic example of an "excited utterance" and therefore was sufficiently reliable, as well as crucial to his defense, that the state court's exclusion of it ran afoul of *Crane*. On the evidentiary issue, the state court first noted that petitioner did not properly brief the question on appeal because he "wholly failed to present any specific argument concerning each of the hearsay exceptions he contends apply to his out-of-court statements." *State v. Dillon, supra*, at 6. It then held the exclusion of any such statements to have been proper because if petitioner had been allowed to introduce his own alibi-type statements through other witnesses without himself taking the witness stand, "that would have effectively allowed appellant to testify without being under oath, without cross-examination, and without direct scrutiny by the jury." *Id*. The court of appeals cited to *United States v. McDaniel*, 398 F.3d 540 (6th Cir. 2005) as authority for its ruling.

     *McDaniel* is questionable authority for any ruling that went beyond holding that, absent some other hearsay exception, allowing a defendant to introduce his own out-of-court statements is inconsistent with Rule 801(d)(2). It does not deal at all with the issue of whether such statements may come in if they satisfy an exception to the hearsay rule spelled out in Rule 803, such as the exception for excited utterances, and courts do admit such statements, even if they are both made and offered into evidence by the

defendant, so long as they meet the prerequisites of the applicable rule. *See, e.g., State v. Montgomery*, 2005 WL 3081113 (Montgomery Co. App. November 18, 2005). Further, the applicable Rule, Ohio Evid.R. 803(2), allows the admission of such statements regardless of the declarant's availability as a witness, so whether or not the defendant chooses to testify does not appear to be relevant to the determination of whether a statement he made qualifies as an excited utterance and, if so, that it is admissible at trial. Thus, the state court of appeals did not really articulate a reason, beyond petitioner's failure adequately to brief the issue, for upholding the trial judge's exclusion of the alleged excited utterances petitioner may have made about being the victim of a crime.

Nevertheless, the trial judge clearly acted properly in excluding these statements. In order for a statement to qualify under either Ohio or federal law as an "excited utterance," the statement must have been made at a time when the declarant was still under the influence of the event in question and had not had time to fabricate a story. *See, e.g., State v. Wallace*, 37 Ohio St. 3d 87, 90 (1988); *United States v. Beverly*, 369 F.3d 516, 540 (6th Cir. 2004) (statement qualified as excited utterance if the witness had no opportunity to "'contrive or misrepresent'' before making the statement). Here, if, indeed, the events in question happened, petitioner had already made his way to a gas station before he called his mother, and, if he had actually committed the kidnaping and rape for which he was convicted, he had sufficient time to invent a story which would exonerate him before placing the call. On this record, it has not been established that his

statements - whatever they might have been, and even if he took proper steps to preserve the issue for review - were so clearly excited utterances that the exclusion of them served no valid state interest in making sure that the jury heard only reliable evidence. And courts have held that the exclusion of alleged excited utterances on grounds that the prerequisite for admission of such statements has not been satisfied is not a violation of the due process right to present a defense because such exclusion is neither arbitrary or unfair. *See Berry v. Harrington*, 2010 WL 1330157, *8 (C.D. Cal. February 22, 2010), *adopted and affirmed* 2010 WL 1325413 (C.D. Cal. March 31, 2010), *citing United States v. Scheffer*, 523 U.S. 303, 308 (1998)(state evidentiary rules "do not abridge an accused's right to present a defense so long as they are not 'arbitrary' or 'disproportionate to the purposes they are designed to serve,'" *quoting Rock v. Arkansas*, 483 U.S. 44, 56 (1987)). Consequently, there is no merit to petitioner's first ground for relief.

## B. Ground Three - Sufficiency of the Evidence

Petitioner's third ground for relief is that the evidence was constitutionally insufficient to support his conviction for rape. He argues that the circumstantial evidence presented at trial was so unconvincing that a reasonable jury could not have convicted him - or, for that matter, anyone - of the alleged rape or the attempted murder. In his traverse, he makes much of the fact that the state did not test all of the available evidence, such as windows and surfaces in the victim's home, for "touch DNA," and that there was no evidence that petitioner or anyone else took any

substantial step toward the completion of the crime of murder.

As this Court explained in *Lynch v. Hudson*, 2011 WL 4537890, *81-82 (S.D. Ohio September 28, 2011) (Frost, J.),

> In *Jackson v. Virginia* {443 U.S. 307 (1979)], the United States Supreme Court held that as a matter of fundamental due process, a criminal conviction cannot stand unless each essential element is proven beyond a reasonable doubt. 443 U.S. at 316. The Supreme Court explained that when reviewing a challenge to the constitutional sufficiency of the evidence supporting a criminal conviction, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id*. at 319. The Supreme Court cautioned, with respect to the role of a reviewing court, that "[t]his familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Id*. Thus, after reviewing the evidence in a light most favorable to the prosecution and respecting the trier of fact's role in determining witnesses' credibility and weighing the evidence, a federal court must grant habeas corpus relief "if it is found that upon the record evidence at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt." *Id*. at 324.

> It is important to remember when reviewing a sufficiency of the evidence challenge that this Court "do[es] not reweigh the evidence, re-evaluate the credibility of the witnesses, or substitute [its] judgment for that of the jury." *Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir.2009). If the record contains credible, competent evidence enabling a rational jury to find each essential element beyond a reasonable doubt, then Petitioner's challenge to the sufficiency of the evidence fails. *Cf. Matthews v. Abramajtys*, 319 F.3d 780, 788–89 (6th Cir.2003) ("The mere existence of sufficient evidence to convict therefore defeats a petitioner's claim.").

> *Further, as the Sixth Circuit has explained, "[i]n a habeas proceeding, however, we cannot simply conduct de novo review of the state court's application of [the *Jackson v. Virginia*] rule, but must review its sufficiency-of-the-evidence decision under the highly deferential standard of the AEDPA." *Saxton v. Sheets*, 547 F.3d 597, 602 (6th Cir.2008). In *Tucker v. Palmer,* 541 F.3d 652 (6th Cir.2008), the Sixth Circuit explained in more

detail:

> Accordingly, the law commands deference at two levels in this case: First, deference should be given to the trier-of-fact's verdict, as contemplated by *Jackson*; second, deference should be given to the Michigan Court of Appeals' consideration of the trier-of-fact's verdict, as dictated by the AEDPA.

> *Id*. at 656. *See also Parker v. Renico*, 506 F.3d 444, 448 (6th Cir.2007); *Nash v. Eberlin,* 258 F. App'x 761, 765 (6th Cir.2007). This Court recognizes, however, that "even after AEDPA, [the Court] must 'distinguish reasonable speculation from sufficient evidence' when reviewing a state court's application of *Jackson*." *Smith v. Romanowski*, No. 07–1578, 2009 WL 1884451, at *6 (6th Cir. Jul.1, 2009) (Moore, J., dissenting) (quoting *Brown v. Palmer*, 441 F.3d 367, 352 (6th Cir.2006)).

Here, the state court of appeals cited to the Ohio Supreme Court's decision in

*State v. Jenks*, 61 Oho St. 3d 259 (1991) as stating the correct standard for reviewing a

claim that the evidence at trial was constitutionally insufficient.  *Jenks*, in turn, held, in

paragraph 2 of the syllabus, that

> An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. (*Jackson v. Virginia* [1979], 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560, followed.)

This is the proper constitutional standard, and petitioner does not argue otherwise.

However, he asserts that the state court unreasonably applied this standard when it

concluded that the evidence on the rape and attempted murder charges was sufficient to support his convictions on those counts.

The state court dealt with this claim as follows:

In the case at bar, appellant was convicted of attempted murder. R.C. 2923.02, provides that attempted murder is committed by purposely engaging in conduct that, if successful, would constitute or result in the purposeful death of another person.

Appellant was also convicted of rape. The crime of rape is defined in R.C. 2907.02(A)(1)(b) as follows: "No person shall engage in sexual conduct with another who is not the spouse of the offender or who is the spouse of the offender but is living separate and apart from the offender, when any of the following applies: * * * The other person is less than thirteen years of age, whether or not the offender knows the age of the other person."

A. Rape

Appellant first argues the state failed to prove that sexual conduct occurred with the child.

Sexual conduct is defined in R.C. 2907.01(A) as, "vaginal intercourse between a male and female; anal intercourse, fellatio, and cunnilingus between persons regardless of sex; and, without privilege to do so, the insertion, however slight, of any part of the body or any instrument, apparatus, or other object into the vaginal or anal cavity of another. Penetration, however slight, is sufficient to complete vaginal or anal intercourse."

In the case at bar, Adam Garver, a forensic analyst for the Ohio Bureau of Criminal Identification and Investigation testified that he detected the presence of amylase, an enzyme, on the baby's diaper. According to Mr. Garver, "[a]mylase is present in saliva approximately 50 times more concentrated than in any other body fluid. Its main purpose is to begin breaking down foods ..." (4T. at 752).

Dr. Joseph Stein, an emergency room physician, examined the baby shortly after her discovery. He testified, "There was a tiny tear in the left vaginal mucosa anterior or in front of the hymen, which is a hymeneal

ring, a tiny amount of bleeding. And there was some erythema or what we call redness to the area." (4T. at 850). Dr. Stein explained that the injury was not any type of skin irritation and that this injury was "very specific to the vaginal vault." ( Id. at 851, 775 N.E.2d 498).

Gail Hornor, a nurse practitioner and child sexual assault examination expert testified that the injury was above the vagina, "yet it is enclosed in your labia." (5T. at 869). She further testified further, "it (the injury) is very concerning for sexual abuse or sexual assault." ( Id. at 870, 775 N.E.2d 498).

The state further submitted evidence that the mud covering appellant's clothing is consistent with the samples from where the van was found. (5T. at 888-896); appellant's DNA is on the onesie that the baby was wearing when she was found (4T. 815 -824); and the child's DNA was found on the hip area of the appellant's shirt. ( Id.) DNA testing excluded more than 99.89% of the population as contributors for each respective sample. ( Id. at 842-843, 775 N.E.2d 498).

Viewing this evidence in a light most favorable to the prosecution, we conclude that a reasonable person could have found beyond a reasonable doubt that appellant had committed the crime of rape of a child less than thirteen years of age.

We hold, therefore, that the state met its burden of production regarding each element of the crime of rape and, accordingly, there was sufficient evidence to support appellant's conviction for rape.

B. Attempted Murder

Appellant next contends that the state failed to prove that he took a substantial step toward the commission of attempted murder.

R.C. 2923.02(A) provides a definition of attempt: "[n]o person, purposely or knowingly, and when purpose or knowledge is sufficient culpability for the commission of an offense, shall engage in conduct that, if successful, would constitute or result in the offense."

The Ohio Supreme Court has held that a criminal attempt occurs when the offender commits an act constituting a substantial step towards the commission of an offense. *State v. Woods* (1976), 48 Ohio St.2d 127, 357

N.E.2d 1059, paragraph one of the syllabus, overruled in part by *State v. Downs* (1977), 51 Ohio St.2d 47, 364 N.E.2d 1140; See also, *State v. Ashbrook*, 5th Dist. No.2004-CA-00109, 2005-Ohio-740, reversed on other grounds and remanded for re-sentencing pursuant to *State v. Foster*, 109 Ohio St.3d 1, 845 N.E.2d 470, 2006-Ohio-856; *In re: Ohio Criminal Sentencing Statutes Cases*, 109 Ohio St.3d 313, 847 N.E.2d 1174, 2006-Ohio-2109. In defining substantial step, the *Woods'* Court indicated that the act need not be the last proximate act prior to the commission of the offense. *Woods* at 131-32, 357 N.E.2d 1059. However, the act "must be strongly corroborative of the actor's criminal purpose." *Id*. at paragraph one of the syllabus. This test "properly directs attention to overt acts of the defendant which convincingly demonstrate a firm purpose to commit a crime, while allowing police intervention, based upon observation of such incriminating conduct, in order to prevent the crime when the criminal intent becomes apparent." *Woods, supra* at 132, 357 N.E.2d at 1063. In other words, a substantive crime would have been committed had it not been interrupted. R.C. 2923.02(D) provides that: "[i]t is an affirmative defense to a charge under this section that the actor abandoned his effort to commit the offense or otherwise prevented its commission, under circumstances manifesting a complete and voluntary renunciation of his criminal purpose."

However, the abandonment must be "complete" and "voluntary" in order to exculpate a defendant. Where one abandons an attempted crime because he fears detection or realizes that he cannot complete the crime, the "abandonment" is neither "complete" nor "voluntary." *Woods, supra*, 48 Ohio St.2d at 133, 357 N.E.2d 1059.

Precisely what conduct will be held to be a substantial step must be determined by evaluating the facts and circumstances of each particular case. *State v. Group* (2002), 98 Ohio St.3d 248, 262, 2002-Ohio-7247 at ¶ 100, 781 N.E.2d 980, 996.

The intent with which an act is committed may be inferred from the act itself and the surrounding circumstances, including acts and statements of a defendant. *State v. Garner* (1995), 74 Ohio St.3d 49, 60, 1995-Ohio-168, 656 N.E.2d 623, 634; *State v. Wallen* (1969), 21 Ohio App.2d 27, 34, 254 N.E.2d 716, 722.

In the case sub judice, the information before the jury was that a 14-month-old baby was removed from her home in the middle of the

night. She was driven to an abandoned cornfield some 25 minutes from her home. The baby was sexually assaulted and left near a road at the edge of the woods with nothing but a blanket for protection.

Upon careful review of the record, we are persuaded that the state adduced credible probative evidence on each element of the offense of attempted murder that would enable a reasonable juror to find that appellant took a substantial step in a course of conduct planned to culminate in the commission of murder. *State, ex rel. Squire v. Cleveland* (1948), 150 Ohio St. 303, 345, 82 N.E.2d 709; *State v. Woods, supra.*

We hold, therefore, that the state met its burden of production regarding each element of the crime of attempted murder and, accordingly, there was sufficient evidence to support appellant's conviction for attempted murder.

"A fundamental premise of our criminal trial system is that 'the jury is the lie detector.' *United States v. Barnard*, 490 F.2d 907, 912 (C.A.9 1973) (emphasis added), *cert. denied*, 416 U.S. 959, 94 S.Ct. 1976, 40 L.Ed.2d 310 (1974). Determining the weight and credibility of witness testimony, therefore, has long been held to be the 'part of every case [that] belongs to the jury, who are presumed to be fitted for it by their natural intelligence and their practical knowledge of men and the ways of men.' *Aetna Life Ins. Co. v. Ward*, 140 U.S. 76, 88, 11 S.Ct. 720, 724-725, 35 L.Ed. 371 (1891)." *United States v. Scheffer* (1997), 523 U.S. 303, 313, 118 S.Ct. 1261, 1266-1267, 140 L.Ed.2d 413.

The jury was free to accept or reject any and all of the evidence offered by the parties and assess the witness's credibility. "While the jury may take note of the inconsistencies and resolve or discount them accordingly * * * such inconsistencies do not render defendant's conviction against the manifest weight or sufficiency of the evidence". *State v. Craig (*Mar. 23, 2000), Franklin App. No. 99AP-739, *citing State v. Nivens* (May 28, 1996), Franklin App. No. 95APA09-1236 Indeed, the jurors need not believe all of a witness' testimony, but may accept only portions of it as true. *State v. Raver,* Franklin App. No. 02AP-604, 2003-Ohio-958, at ¶ 21, *citing State v. Antill* (1964), 176 Ohio St. 61, 67, 197 N.E.2d 548.; *State v. Burke, Franklin* App. No. 02AP1238, 2003-Ohio-2889, *citing State v. Caldwell* (1992), 79 Ohio App.3d 667, 607 N.E.2d 1096. Although the evidence may have been circumstantial, we note that circumstantial evidence has the same probative value as direct evidence. *State v. Jenks* (1991), 61 Ohio St.3d 259,

574 N.E.2d 492.

After reviewing the evidence, we cannot say that this is one of the
exceptional cases where the evidence weighs heavily against the
convictions. The jury did not create a manifest injustice by concluding that
appellant was guilty of the crimes of attempted murder and rape.

Based upon the foregoing and the entire record in this matter, we find
appellant's convictions were neither against the manifest weight nor
against the sufficiency of the evidence. To the contrary, the jury appears to
have fairly and impartially decided the matters before it. The jury heard
the witnesses, evaluated the evidence, and was convinced of appellant's
guilt.

*State v. Dillon, supra,* at *7-11.

The Court cannot say, in this case, based upon the evidence presented at trial and

as accurately summarized by the state court of appeals, either that the jury's

determination of guilt was unreasonable or that the state court's application of the

principles set out in *Jackson v. Virginia* was unreasonable. To the contrary, the state

court throughly analyzed the evidence and explained how it would have supported a

finding as to each element of both the rape charge and the attempted murder charge.

Petitioner has not pointed to any specific part of the state court's analysis which he

believes to have been unreasonable; rather, he appears to argue that the evidence is so

wholly circumstantial, incomplete, and untrustworthy that the verdict cannot be

sustained.

Frankly, the state court's discussion and resolution of this issue is sufficiently

detailed and reasonable as to make this Court's discussion of the evidence itself largely

unnecessary. As to the rape charge, there was certainly evidence which, if the jury chose to believe it, proved that someone or something had penetrated the vaginal vault of the victim. Petitioner suggests that the victim could have scratched herself or that a snap on her garment could have caused the injury, but that is nothing more than an alternate explanation of the injury which the jury did not have to accept. He also points out that the evidence about an abrasion was, at least in one witness' view, while "concerning" for sexual abuse, not definitive. But it has long been the law that "[i]It is not necessary that circumstantial evidence remove every reasonable hypothesis except that of guilt." *United States v. Stone*, 748 F.2d 361, 363 (6ᵗʰ Cir. 1984). The Court's job, in reviewing the evidence for sufficiency, is not to determine if reasonable jurors could have drawn an inference of innocence, as well as guilt, from the evidence presented, but rather "to make all reasonable inferences in support of the jury's verdict." *United States v. Wettstain*, 618 F.3d 577, 583 (6ᵗʰ Cir. 2010). Doing so here, the jury could reasonably have credited the experts who testified and could have determined that such testimony, along with the undisputed fact that someone had taken the victim from her home in the middle of the night and then abandoned her some hours later, indicated that a sexual assault had occurred. That is enough to sustain a verdict on the rape charge or, at the very least, to have allowed the state court to decide, as it did, that the evidence on that charge was sufficient.

The same is true with respect to evidence linking petitioner to this crime. Again, he offers alternative explanations for how his DNA came to be on the victim's garment,

and her DNA on his clothing, but the jury did not have to believe the evidence about that, which came only from petitioner's mother. The victim's mother testified that petitioner had not been to her house for approximately six months before the kidnaping, that he never held the victim, and that he never touched any of her clothing. Petitioner suggests that this testimony was not worthy of belief, but it is uniquely within the province of the jury to decide what weight to give to conflicting testimony, and the Court's role on a *Jackson v. Virginia* review is clearly not to upset those determinations or to re-weigh the evidence.

As far as the attempted murder charge is concerned, the evidence was undisputed that the victim was left abandoned in a remote area, in the wintertime, wrapped only in a blanket. She had no means to rescue herself. There was evidence, beyond the obvious, that a child placed in that area would be in specific danger from animals. Petitioner argues in his initial supporting memorandum (Doc. #5) that the speculative nature of the evidence of a risk from animals and the fact that the temperature was near seventy degrees on the day the victim was found show that whoever abandoned the child could not have intended that she die. Again, however, it can reasonably be inferred from the mere fact that an infant is abandoned in a remote area without any means of rescuing herself of summoning aid that, if she were not located in a reasonable period of time, she could die. That is the type of common sense evaluation of the evidence that a jury is permitted to engage in. Other courts have inferred, in similar circumstances, that "the remoteness of [a] crime scene increase[s] the

risk that the victim [will] not be found." *See State v. Julian*, 1997 WL 412539 (Tenn. Crim. App. July 24, 1997). This jury could have so determined, and, again, the state court of appeals did not act unreasonably in holding that this type of evidence supported a charge of attempted murder. Thus, there is no merit in petitioner's third ground for relief.

## V. RECOMMENDED DISPOSITION

For all the foregoing reasons, the Magistrate Judge **RECOMMENDS** that petitioner's claims be **DISMISSED.**

## VI. PROCEDURE ON OBJECTIONS

If any party objects to this Report and Recommendation, that party may, within fourteen days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions. 28 U.S.C. §636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation de novo, and also operates as a waiver of the right to

appeal the decision of the District Court adopting the Report and Recommendation. *See*

*Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

The parties are further advised that, if they intend to file an appeal of any

adverse decision, they may submit arguments in any objections filed, regarding

whether a certificate of appealability should issue.


/s/ Terence P. Kemp
United States Magistrate Judge