IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

RANDY L. DILLON,

    Petitioner,

v.

    Case No. 2:10-cv-638

WARDEN, ROSS CORRECTIONAL
INSTITUTION,

    JUDGE JAMES L. GRAHAM
    Magistrate Judge Kemp

    Respondent.

## OPINION AND ORDER

Petitioner, a state prisoner, has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. §2254. This matter is before the Court by way of a Report and Recommendation which recommends dismissal of the petition, and petitioner's objections to that Report. There has been no response to the objections. However, for the following reasons, the objections will be overruled and this case will be **DISMISSED**.

I.

Petitioner does not take issue with the way in which the Report and Recommendation states the facts and procedural history of this case, and that portion of the Report and Recommendation is incorporated by reference into this Opinion and Order. Briefly, after petitioner was indicted in 2007 on charges of burglary, kidnaping, attempted murder, unlawful sexual conduct (rape) and unlawful sexual contact (gross sexual imposition) with a minor, and after his first trial ended in a mistrial, he was

convicted by a jury on all counts except gross sexual imposition. He was sentenced to life without parole on the rape charge (the victim was a 14-month-old child) and to lesser, consecutive sentence on the other charges. He filed a timely appeal raising six assignments of error, all of which were overruled. After the state appellate court's initial decision, petitioner filed a motion to reopen his appeal, as authorized by Ohio Appellate Rule 26(B), but that motion was denied as untimely, and petitioner took no appeal from the denial of that motion. He also filed a motion to vacate his conviction based on lack of subject matter jurisdiction, but the disposition of that motion is not relevant to this habeas corpus action.

Here, he has raised four claims: (1) that the state trial court deprived him of his constitutional right to raise a defense through certain evidentiary rulings; (2) that he was denied the effective assistance of counsel on appeal; (3) that the evidence was constitutionally insufficient to support a conviction; and (4) that the trial court's failure to instruct the jury on a lesser included offense (gross sexual imposition) as it related to the rape charge violated his due process rights. The Report and Recommendation concluded that two of these claims - the second and fourth - were procedurally defaulted, and that the first and third claims lacked merit. Petitioner has conceded that his second claim was procedurally defaulted through his state court counsel's failure to file an appeal of the denial of his Rule 26(B) motion, and that ruling appears clearly to be correct. Therefore, the Court's review of the Report and Recommendation will focus on claims one, three and four.

2

II.

When objections are received to a Magistrate Judge's Report and Recommendation on a dispositive matter, the assigned District Judge "shall make a de novo determination ... of any portion of the Magistrate Judge's disposition to which specific written objection has been made ...." Fed.R.Civ.P. 72(b). After review, the District Judge "may accept, reject, or modify the recommended decision, receive further evidence, or recommit the matter to the Magistrate Judge with instructions." *Id.; see also* 28 U.S.C. §636(b)(1)(B). General objections are insufficient to preserve any issues for review "[a] general objection to the entirety of the Magistrate's report has the same effects as would a failure to object." *Howard v. Secretary of Health and Human Servs.*, 932 F.2d 505, 509 (6th Cir. 1991).

III.

The Court will begin with petitioner's objection to the conclusion that claim four, which deals with trial counsel's failure to request an instruction on lesser included offenses, was procedurally defaulted. The record is clear that trial counsel did not request any such instruction from the trial judge, and that although this claim was raised in the state court of appeals, it limited its discussion of the claim to a "plain error" review. It is the law that a state court's choice to review the merits of an otherwise defaulted claim only for "plain error" does not excuse the procedural default which has occurred because such review is actually an enforcement of the state's procedural rules. *See Hinkle v. Randle*, 271 F.3d 239, 244 (6th Cir. 2001)("we view a state

3

appellate court's review for plain error as the enforcement of a procedural default"). Petitioner does not argue otherwise, but contends that he can satisfy the "cause and prejudice" standard for excusing his procedural default. *See, e.g., Lucas v. O'Dea*, 179 F.3d 412, 418 (6th Cir. 1999)("[i]n the absence of 'cause' and 'prejudice,' federal courts are barred from undertaking a habeas corpus review of state-court decisions that rest on independent and adequate state grounds"), *citing Wainwright v. Sykes*, 433 U.S. 72 (1977). As cause, he characterizes trial counsel's failure to ask for this instruction as constitutionally deficient representation in violation of the Sixth Amendment. *See, e.g., Strickland v. Washington*, 466 U.S. 668 (1984). He also argues that this failure was prejudicial, but the Court need not reach this issue because, even if counsel was constitutionally ineffective, that failure cannot, in the context of this case, excuse the procedural default which occurred.

"Cause" sufficient to justify a procedural default can, as the Supreme Court recognized in *Murray v. Carrier*, 477 U.S. 478, 488 (1986), be demonstrated only if "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." Ordinarily, choices made by counsel at trial, either deliberately or negligently, are not viewed a "external to the defense." However, in *Murray*, the Supreme Court held that if those choices result from constitutionally ineffective assistance of counsel, the responsibility for the default is "imputed to the State" and can excuse a procedural default. *Id.* To that extent, petitioner's argument tracks the law.

What petitioner does not address, however - an omission that is somewhat

4

surprising in view of the fact that he is represented by counsel in this Court - is the remainder of the Supreme Court's holding in *Murray v. Carrier*, which is that the exhaustion doctrine, codified in 28 U.S.C. §2254(b), (c), "generally requires that a claim of ineffective assistance be presented to the state courts as an independent claim before it may be used to establish cause for a procedural default." *Murray*, 477 U.S. at 489. Even if such a claim is "presented" to the state courts, if it is not presented properly and as a result is itself procedurally defaulted, it will not excuse the underlying procedural default. *Edwards v. Carpenter*, 529 U.S. 446, 453 (2000)("an ineffective-assistance-of-counsel claim asserted as cause for the procedural default of another claim can itself be procedurally defaulted").

Petitioner did not properly present the claim of ineffective assistance of counsel to the state courts, and does not argue that he has satisfied either *Murray's* requirement that such a claim be presented or *Edwards'* requirement that it not have been procedurally defaulted. Because "[f]or ineffective assistance of .. counsel to serve as cause, the petitioner must first have properly presented the claim of ineffective assistance of .. counsel to the state courts," *Henness v. Bagley*, 644 F.3d 308, 317 (6th Cir. 2011), and because that did not happen here, petitioner cannot show cause to excuse the procedural default which was enforced by the state appellate court. Thus, his objection to the finding that his claim relating to the trial court's failure to instruct on a lesser-included offense was procedurally defaulted is without merit.

IV.

5

Claims one and three were not procedurally defaulted, and petitioner is entitled to a de novo review on the issue of whether either claim has merit. As in all cases filed under 28 U.S.C. §2254, the Court begins with the applicable standard under which claims for habeas corpus relief are judged.

The provisions of the Antiterrorism and Effective Death Penalty Act, Pub.L. 104-132, 110 Stat. 1214 (AEDPA) govern the scope of this Court's review. *See Penry v. Johnson*, 532 U.S. 782, 791, 121 S.Ct. 1910, 150 L.Ed.2d 9 (2001); *Wilson v. Parker*, 515 F.3d 682, 691 (6th Cir.2008). AEDPA imposes a "highly deferential standard for evaluating state-court rulings," *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997), and "demands that state-court decisions be given the benefit of the doubt," *Woodford v. Visciotti*, 537 U.S. 19, 24, 123 S.Ct. 357, 154 L.Ed.2d 279 (2002) (per curiam). *Renico v. Lett*, 130 S.Ct. 1855, 1862 (2010)(footnote omitted).

When the claims presented in a habeas corpus petition have been presented to and decided by the state courts, a federal habeas court may not grant relief unless the state court's decision was contrary to or an unreasonable application of clearly established federal law, or based on an unreasonable determination of the facts in light of the evidence that was presented. 28 U.S.C. §2254(d) provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

6

>(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding

In applying this statute, the Supreme Court has held that "[t]he focus . . . is on whether the state court's application of clearly established federal law is objectively unreasonable . . . an unreasonable application is different from an incorrect one." *Bell v. Cone*, 535 U.S. 685, 694 (2002). To obtain habeas corpus relief, a petitioner must show the state court's decision was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Bobby v. Dixon*, – S.Ct. –, 2011 WL 5299458, at *1 (Nov. 7, 2011)(*quoting Harrington v. Richter*, 562 U.S. ----, ----, 131 S.Ct. 770, 786–87 (2011)). This bar is "difficult to meet" because "habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Harrington v. Richter*, 131 S.Ct. at 786 (*quoting Jackson v. Virginia*, 443 U.S. 307, 332, n. 5 (1979) (Stevens, J., concurring in judgment)). In short, "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Id.*, *quoting Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004).

### A.

Petitioner's first claim focuses on rulings made by the trial judge which affected his ability to present an alibi defense. A brief review of the facts is necessary to place this argument in its proper context.

The events leading to petitioner's indictment and conviction occurred in the early morning hours of March 13, 2007. A 14-month-old child, M.B., was abducted from her home that night. Her mother noticed her missing at 4:00 a.m. The police were called and began an investigation. Several hours before, petitioner, who had been out drinking with friends, borrowed the keys to a friend's van, ostensibly to go get cigarettes, and never returned. He called his friends after 5:00 a.m. from a gas station, asking for a ride. At noon that same day, M.B. was found, alive, alongside State Route 146 in the Dillon Wildlife Area, wrapped in a comforter.

Several days later, the van which petitioner had borrowed was found abandoned near the place where the victim was discovered. There were a number of items of evidence linking the victim to the van, including the fact that a bedsheet from the victim's home was found in the van, and the comforter in which the victim was wrapped had been placed in the van by the owner's wife. DNA tests also linked petitioner to the victim. Petitioner was therefore charged with kidnaping the victim and, because there was medical evidence of sexual assault, also charged with raping her.

As part of his defense, petitioner proposed to put on evidence that, at the same time the kidnaping occurred, he himself was the victim of an assault, which he attempted to report to the police. The evidence which the trial court excluded was testimony from two other witnesses, Zanesville police officer Terry Sheets and petitioner's mother, about what petitioner told them had happened to him that night. It

8

appears that these statements would have been hearsay to the extent that they were offered to prove petitioner's claim that he had been robbed and beaten, and they were deemed inadmissible for that reason. Petitioner argued to the state court of appeals, and argues here, that because he was not allowed to present this evidence to the jury, despite the fact that it fell within well-recognized exceptions to Ohio's hearsay rule, his due process right to present an effective defense was infringed. Obviously, petitioner himself could have testified directly to the events which he spoke to Officer Sheets and to his mother about, but he elected not to take the witness stand.

The Report and Recommendation concluded that these statements were hearsay and that the trial court's exclusion of them was proper. Relying on authority that the application of state hearsay rules to exclude evidence does not violate a defendant's right to present a defense because such rules do not reflect arbitrary or unfair applications of the law, *see, e.g., United States v. Scheffer*, 523 U.S. 303, 308 (1998), the Magistrate Judge found no merit to this claim. Petitioner continues to argue, however, that the evidence either was not hearsay or fell within the "excited utterance" exception, and that by excluding clearly admissible evidence which was the only evidence supporting his alibi defense, the trial court committed a due process violation.

As the Court of Appeals has noted, "The Sixth Amendment guarantees a criminal defendant the right to ...'a meaningful opportunity to present a complete defense,' *Crane v. Kentucky*, 476 U.S. 683, 690, 106 S.Ct. 2142, 90 L.Ed.2d 636 (1986) (internal quotation marks omitted)." *Jordan v. Warden, Lebanon Correctional Institution,*

9

__ F.3d. __, 2012 WL 997476, *5 (6th Cir. March 27, 2012). But the guarantee is not that any evidence at all may be used in defense; rather, it is simply that the state courts provide a defendant with a reasonable opportunity to present that defense. *Cf. Jordan, supra*, at *6. It may be that a totally baseless refusal to apply a clearly-recognized hearsay exception to evidence vital to a defense could be viewed as a constitutional violation, but that is not what happened here. The trial judge had a reasonable basis for determining that petitioner's statements to his mother were not "excited utterances." As the Report and Recommendation explains,

> Here, if, indeed, the events in question happened, petitioner had already made his way to a gas station before he called his mother, and, if he had actually committed the kidnaping and rape for which he was convicted, he had sufficient time to invent a story which would exonerate him before placing the call.

Report and Recommendation, ECF No. 21, at 18. His argument, in his objections, that he made the call "in the moments following freeing himself from being abducted, robbed and beaten" (Objections, ECF No. 27, at 14) simply assumes that his version of the facts is true, even though he presented no independent evidence of their truth, and further assumes that the state trial court was somehow bound to believe this version in making its ruling. That is simply not the case. Further, petitioner was allowed to present evidence that he had placed these calls, about his appearance on the night in question, and about the fact that he sought and received medical attention. This Court concludes that petitioner has not shown that the state appellate court's rejection of this claim represented an unreasonable application of federal law, and agrees that his first

claim is without merit.

B.

Petitioner's remaining claim (claim three), is that his conviction for rape was not supported by the constitutionally-required minimum amount of evidence. He does not challenge the legal standard which the Report and Recommendation articulates as applicable to this type of claim, and, as the Report and Recommendation noted, a petitioner who challenges to the sufficiency of the evidence made under the AEDPA, must meet an "exacting standard." In *Lynch v. Hudson*, 2011 WL 4537890, *81-82 (S.D. Ohio September 28, 2011), this Court detailed that standard, noting that it involves both deferring to the jury's resolution of conflicts in the evidence unless no rational trier of fact could have found that the elements of the offense were proven, and deferring to the state courts' determination that the petitioner had not carried his burden of proving that, drawing all reasonable inferences in favor of the prosecution, no rational fact-finder could have found him guilty. *See also Tucker v. Palmer*, 541 F.3d 652, 656 (6th Cir. 2008)("the law commands deference at two levels in this case"). It is plain that petitioner cannot overcome the deference owed both to the state court jury and the state appellate court, each of which found enough evidence to establish petitioner's guilt beyond a reasonable doubt.

In his objections, as he did in his petition, petitioner details all of the evidence which, if believed, points toward his innocence. His recitation of the facts assumes the truth of his story that he borrowed the van to get cigarettes and that he was beaten and

11

robbed. It focuses on the lack of certain kinds of evidence, such as "touch" or "contact" DNA, which he claims should have been discoverable had he been the one to enter the baby's room and abduct her. It also points out that the tire track evidence was not definitive (although it certainly did not rule out the van as having made the tracks discovered outside the victim's home), that the mud samples on petitioner's clothing, although similar to mud from the area where the victim was found, could not be matched with absolute certainty, and that the forensic evidence about whether there had been sexual contact with the child was not airtight. Finally, petitioner points out that his mother, who claimed that she would not lie for him, testified that he had held the victim shortly before the night of the abduction, thus providing the jury with an explanation for how his DNA got on the victim's clothing and how hers ended up on his shirt. In order for the jury to have made an alternate finding, he claims that the jury had to credit the testimony of other witnesses to the opposite effect, but that one of those witnesses had a past conviction for falsification, whereas his mother did not.

    This argument conveniently ignores the fact that credibility determinations such as the one petitioner asks this Court to make are quintessentially the jury's function. Further, petitioner spends little time discussing the evidence showing that it was he who was last seen driving the van, that the evidence that the victim had been in the van was strong, and that he was in the same vicinity as the victim at about the same time she was abandoned on the roadside. The DNA evidence surely could have led the jury to believe that he had contact with the victim at some time, and not necessarily as his

12

mother described. The medical testimony provided ample evidence of sexual contact, even though petitioner proffered an alternate explanation for the abrasions on the victim's genitals. Again, the jury was permitted to reject on alternate explanation in favor of another as long as some credible and competent evidence supported either. That is what the jury did here. There was nothing unreasonable about the state appellate court's conclusion that, under the constitutional standard which is drawn from *Jackson v. Virginia*, 443 U.S. 307 (1979), the jury's verdict was supported by a sufficient amount of evidence to permit a finding of guilt beyond a reasonable doubt. Petitioner's third claim, and his objections to the Report and Recommendation's evaluation of that claim, are therefore not meritorious.

## V.

For the reasons stated above, the petitioner's objections (ECF No. 27) are **OVERRULED.** The Magistrate Judge's Report and Recommendation (ECF No. 21) is **ADOPTED** and **AFFIRMED.** This action is hereby **DISMISSED.**

**IT IS SO ORDERED.**

Date: April 3, 2012

*(signature)*
JAMES L. GRAHAM
**United States District Judge**

13